NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

STANLEY ROBERT WEST, *Appellant*.

No. 1 CA-CR 24-0611

FILED 02-06-2026

Appeal from the Superior Court in Maricopa County
No.  CR1998-095842-001
The Honorable Justin Beresky, Judge

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Christine A. Davis
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Aaron J. Moskowitz
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Andrew J. Becke joined.

---

**C A T T A N I**, Judge:

¶1  Stanley Robert West appeals his convictions and sentences for four counts of aggravated driving under the influence ("DUI") with a minor present. We vacate the two convictions (Counts 2 and 5) based on driving with a marijuana metabolite in the driver's body. *See* A.R.S. § 28-1381(A)(3). The Arizona Supreme Court's has clarified that this statute applies only to impairing metabolites, *see State ex rel. Montgomery v. Harris (Shilgevorkyan)*, 234 Ariz. 343, 343, 347, ¶¶ 1, 24 (2014), and the only references apparent in the record related to a non-impairing metabolite. Accordingly, we remand for a new trial on these counts should the State opt to pursue them. We also vacate the sentencing order's recitation that West was convicted and sentenced for possession of marijuana and drug paraphernalia, counts that were dismissed with prejudice at the State's request. We affirm in all other respects.

**FACTS AND PROCEDURAL BACKGROUND**

¶2  In 1998, West was involved in a three-car collision while his three- and four-year-old sons were in his car. Responding law enforcement officers noted that West displayed signs of impairment including bloodshot, watery eyes as well as eyelid and body tremors. A drug recognition expert evaluated West as being impaired by marijuana, and West admitted that he smoked marijuana an hour before the accident, adding that he "should know better to drive with [his] kids in the car when [he was] high." Urinalysis showed the presence of marijuana metabolite Carboxy-THC. Officers found a pipe with marijuana and a small wooden box containing marijuana in West's pocket.

¶3  The State charged West with four counts of aggravated DUI with a minor in the vehicle (driving while impaired to the slightest degree and driving with marijuana or its metabolite in the driver's body, both

charged as to each of West's two minor sons who were present).[1]  *See* A.R.S. §§ 28-1381(A)(1) (DUI for driving while impaired to the slightest degree), (3) (DUI for driving with a drug or its metabolite), -1383(A)(3)(a) (aggravated DUI for committing DUI with a minor under 15 years old in the vehicle).  West, who was not in custody, attended most of the August 1999 trial and testified on his own behalf, but he absconded before closing arguments.  The jury found him guilty as charged.

¶4        West remained at large for almost 25 years.  After his arrest in 2024, the court suspended sentence and imposed four concurrent terms of three years' supervised probation.  With authorization from the superior court, West filed a delayed appeal.

¶5        West's counsel designated multiple transcripts to be prepared as part of the record on appeal, including several from proceedings in 1999.  Problems arose with preparation of transcripts for four pretrial hearings and both days of trial.  This court was unable to locate or contact several of the court reporters involved.  The Maricopa County Superior Court reported that it had neither transcripts nor court reporter notes (electronic or hard copy) for the 1999 proceedings and that no electronic recording was available for hearings that old.  Superior court personnel were able to contact two of the five court reporters involved, who confirmed they did not have notes for the hearings; of the other three court reporters, one had died and the other two were unreachable.

¶6        This court stayed the appeal to permit an attempt to reconstruct the record.  *See* Ariz. R. Crim. P. 31.8(e)–(f).  Despite diligent efforts, defense counsel was unable to contact West to provide a narrative statement or other information, and the parties were unable to glean sufficient information from the trial attorneys' files to reconstruct the record.  The superior court informed this court that the parties were unable to craft a narrative or agreed statement in lieu of transcripts, *see* Ariz. R. Crim. P. 31.8(e)–(f), and we proceeded with the appeal with the available record.

---

[1]        The original charges also included one count of possession of marijuana and one count of possession of drug paraphernalia.  The court later dismissed those counts with prejudice at the State's request.  To the extent the sentencing order suggests West was guilty of those offenses and sentenced him to prison for them, those recitations are incorrect and we vacate them.

## DISCUSSION

### I.    Lack of Transcripts.

¶7      West argues that he is entitled to a new trial because, without the transcripts, the record is not sufficiently complete to afford him the meaningful appeal to which he is constitutionally entitled.  The Arizona Constitution provides criminal defendants "the right to appeal in all cases." Ariz. Const. art. 2, § 24.  This necessarily includes a record that, even if not perfect, is of "sufficient completeness" for the defendant to assign error and the court to consider the errors assigned.  *State v. Schackart*, 175 Ariz. 494, 499 (1993).

¶8      Not every lost or unavailable transcript, however, requires a new trial.  *State v. Hart*, 110 Ariz. 55, 57 (1973); *State v. Masters*, 108 Ariz. 189, 192 (1972); *see also State v. Washington*, 108 Ariz. 111, 112–13 (1972) (affirming a represented defendant's guilty-plea-based conviction despite lack of transcript of the change of plea).  The parties can, if possible, provide a reasonable substitute by reconstructing the record via narrative statement prepared by "best available means" (tested by opposing parties then settled and approved by the court) or via an agreed statement.  *See Hart*, 110 Ariz. at 57; *Masters*, 108 Ariz. at 192; *see also* Ariz. R. Crim. P. 31.8(e)(2), (f)(1), (4). Even when such a substitute is unavailable, the defendant must show "at least a credible and unmet allegation of reversible error," else "the remaining record will suffice to support" the judgment.  *Masters*, 108 Ariz. at 192.   But where "through no fault of the defendant the reporter's transcript is unavailable and the defendant has shown prima facie fundamental error," the proper remedy is a new trial.  *Id.*

### A.    Fault.

¶9      The State asserts that West is not entitled to relief because by unlawfully absconding for nearly 25 years and thereby delaying sentencing and any appeal, West caused or contributed to the lack of transcripts. Although the State characterizes "no fault" as a threshold requirement, it offers no Arizona case law finding a defendant's absence or delay alone dispositive in this regard.  *See, e.g., State v. Sahagun-Llamas*, 248 Ariz. 120, 126–28, ¶¶ 24–31 (App. 2020); *Masters*, 108 Ariz. at 191–92; *see also Hart*, 110 Ariz. at 56–57 (delayed appeal rather than absconder); *In re Jorge D.*, 202 Ariz. 277, 282, ¶¶ 26–27 (App. 2002) (defects in transcript rather than delay); *State v. Demello*, 1 CA-CR 14-0308, 2016 WL 314385, at *2, ¶ 10 (Ariz. App. Jan. 26, 2016) (mem. decision) (observing that "absconding defendants may

not be permitted to benefit from such voluntary, unlawful conduct" but ultimately addressing his claim of error).

¶10        Even if we might reasonably assume that West's long absence made reconstructing the record more difficult, *see Masters*, 108 Ariz. at 192 (noting that attempting reconstruction after six years "would probably not be of much aid"); *Sahagun-Llamas*, 248 Ariz. at 127, ¶ 27 (noting that participants' "comparatively fresh memories" closer in time to trial could facilitate reconstruction), that does not mean West's absence resulted in unavailability of the transcripts themselves.  The court, not the defendant, is responsible for preserving the record, particularly where (as here) the case had not yet ended.  *See Sahagun-Llamas*, 248 Ariz. at 126, ¶ 25; *see also* Ariz. Sup. Ct. Admin. Order 91-13, No. 2.b (retention schedule, in place at the time of West's trial and effective until 2006, requiring "permanent" retention of court reporter notes in criminal cases, at least until a transcript is prepared); Ariz. Code Jud. Admin § 3-402(D), Record Series # 40(a) (current retention schedule requiring retention of the verbatim record in non-capital criminal cases for "20 years from the date of sentencing or other final order of the court, unless a transcript is prepared").  Even if a prolonged absence might have increased the risk that portions of the record could be lost (and the State has made no such fact-based showing here), *see State v. Verikokides*, 925 P.2d 1255, 1257 (Utah 1996), without some indication that the defendant was warned of this risk or in fact intended to corrupt the record, *see Sahagun-Llamas*, 248 Ariz. at 126–28, ¶¶ 25, 27–29, we decline to consider West's absconder status alone to be dispositive.

### B.        Allegations of Reversible Error.

¶11        West asserts that the available record shows several "credible and unmet allegation[s] of reversible error" that warrant a new trial.  *See Masters*, 108 Ariz. at 192.

¶12        First, West notes that the superior court denied his oral motion for change of counsel during one of the pretrial hearings for which no transcript is available.  He asserts that a conflict is corroborated by West's and counsel's statements at a later hearing for which a transcript was prepared.  But while the Sixth Amendment guarantees representation by competent counsel, it does not guarantee counsel of choice.  *See State v. Torres*, 208 Ariz. 340, 342, ¶ 6 (2004).  And the comments that West now highlights show only generalized dissatisfaction with his attorney and not the "irreconcilable conflict or a complete breakdown in communication" necessary to suggest error.  *Id.*

¶13        Second, West notes that the trial minute entries do not recite whether or when the jurors were sworn. *See State v. Godfrey*, 136 Ariz. 471, 473 (App. 1983) (characterizing the jurors' oath as "an essential element of the constitutional guarantee to a trial by an 'impartial jury'" and suggesting that trial to a never-sworn jury would warrant reversal); *see also* Ariz. R. Crim. P. 18.6(b) (required oath or affirmation). But all six verdict forms—on the form itself and reflected in the minute entry for the second day of trial—expressly declare that the jury was sworn, disproving West's suggestion of error.

¶14        Third, West contests the sufficiency of the evidence to support the convictions. Two counts were based on West driving while "impaired to the slightest degree" due to any drug. *See* A.R.S. §§ 28-1381(A)(1), -1383(A)(3)(a). West highlights that the trial exhibits do not show impairment and that the trial transcripts are unavailable and thus offer no evidence at all. But other parts of the record show evidence that could establish impairment: testimony during the preliminary hearing reflected that West showed signs of impairment like bloodshot, watery eyes along with eyelid and body tremors just after the accident; that a drug recognition expert assessed West and determined he was impaired by marijuana; and that at the scene, West admitted to smoking marijuana an hour before the accident and confessed he "should know better to drive with [his] kids in the car when [he was] high." This evidence from the preliminary hearing might not have been admitted at trial. But its presence elsewhere in the record coupled with the superior court's denial of West's motion for judgment of acquittal and the jury's guilty verdicts after proper instruction on the elements of the offense undermine West's allegation of error as to the impaired-to-the-slightest-degree counts.

¶15        The two other counts were premised on West driving with marijuana or its metabolite in his body. *See* A.R.S. §§ 28-1381(A)(3), -1383(A)(3)(a); *see also* A.R.S. § 13-3401(4)(b); *Shilgevorkyan*, 234 Ariz. at 343, ¶ 1 n.1. As to these counts, West highlights that the only metabolite referenced in the record was Carboxy-THC, a non-impairing marijuana metabolite. And the Arizona Supreme Court has since clarified that the term "metabolite" in this statute is limited to "metabolites that are capable of causing impairment," expressly excluding the non-impairing Carboxy-THC. *Shilgevorkyan*, 234 Ariz. at 343, 347–48, ¶¶ 1, 24–25.

¶16        As to the metabolite-based counts, West has offered a "credible and unmet allegation of reversible error." *See Masters*, 108 Ariz. at 192. Although we do not know the full scope of trial evidence with certainty, Carboxy-THC was the only metabolite listed on the urinalysis

results admitted at trial or mentioned during the preliminary hearing. The jury instructions likewise referenced only "marijuana or its metabolite," without regard to whether the metabolite was impairing. And given the understanding of the law at the time of trial in 1999, *see State v. Hammonds*, 192 Ariz. 528, 531, ¶¶ 8–11 (App. 1998) (denying an equal protection challenge to a conviction based on a non-impairing metabolite), the parties reasonably may not have understood reliance on Carboxy-THC to be improper. But as defined in *Shilgevorkyan*, the presence of Carboxy-THC does not establish guilt on the metabolite-based counts. 234 Ariz. at 347–48, ¶ 25. West has thus met his burden under *Masters*, 108 Ariz. at 192, and we vacate the metabolite-based convictions (Counts 2 and 5) and remand for a new trial on these counts, should the State decide to pursue them.

**¶17** Finally, West notes that he testified at trial and suggests that, absent a transcript, this fact alone justifies a new trial. Although the defendant's testimony (and the defense case generally) may be relevant to an allegation of insufficient evidence, *see Sahagun-Llamas*, 248 Ariz. at 125–26, ¶¶ 21–23, the defendant still must make "at least a credible and unmet allegation of reversible error" to warrant a new trial on this basis, *see Masters*, 108 Ariz. at 192. West offers no such allegation tethered to his trial testimony. And West was uniquely positioned to provide insight into this facet of trial (and perhaps others), whether by narrative statement or otherwise—but defense counsel concedes that he was unable to confer with (or even find) West after filing the appeal. Accordingly, West has not shown grounds for a new trial on this basis.

## II. Eight-Person Jury.

**¶18** West argues that his trial by an 8-person, rather than 12-person, jury violated the Sixth Amendment. As he acknowledges, the United States Supreme Court in *Williams v. Florida*, 399 U.S. 78, 102–03 (1970), held that the Sixth Amendment permits juries of less than 12 persons. West asserts, however, that the Court's later decision in *Ramos v. Louisiana*, 590 U.S. 83 (2020), which addressed jury unanimity and not jury size, impliedly overruled *Williams*.

**¶19** This court has rejected this argument on multiple occasions. *See State v. Armendaris*, 259 Ariz. 454, 456–57, ¶¶ 13–20 (App. 2025); *see also id.* at 456, ¶ 14 n.1 (listing four memorandum decisions rejecting this argument); *State v. Moreno*, 2 CA-CR 2024-0016, 2025 WL 2732481, at *6–7, ¶¶ 29–32 (Ariz. App. Sept. 25, 2025) (mem. decision) (agreeing with *Armendaris* that *Ramos* did not abrogate *Williams* as to constitutionality of an 8-person jury).

7

¶20 We remain bound by *Williams*, the Supreme Court precedent that directly controls the issue. *See Armendaris*, 259 Ariz. at 457, ¶ 19 (citing *Agostini v. Felton*, 521 U.S. 203, 207 (1997), and *Khorrami v. Arizona*, 598 U.S. ___, ___, 143 S. Ct. 22, 23 (2022) (Gorsuch, J., dissenting from denial of certiorari) (lamenting that the Court declined to reconsider *Williams*)); *see also Ramos*, 590 U.S. at 157–58 (Alito, J., dissenting) (noting that the *Ramos* majority's reasoning "will almost certainly prompt calls to overrule *Williams*," but not that *Ramos* had in fact overruled *Williams*). We are likewise bound by the Arizona Supreme Court's ruling in *State v. Soliz*, 223 Ariz. 116, 118, ¶¶ 6–7 (2009), which recognized *Williams*'s holding when assessing Arizona's laws on jury size. *See Armendaris*, 259 Ariz. at 457, ¶ 19; *see also* Ariz. Const. art. 2, § 23 (requiring a 12-person jury "in criminal cases in which a sentence of death or imprisonment for thirty years or more is authorized by law"); A.R.S. § 21-102(B) (authorizing an 8-person jury in "any other criminal case"). West has not shown error.

## CONCLUSION

¶21 We vacate the two metabolite-based convictions (Counts 2 and 5) and remand for a new trial on these counts should the State decide to pursue them. We likewise vacate the sentencing order's language indicating conviction and sentence for the now-dismissed-with-prejudice possession of marijuana and paraphernalia counts. We affirm in all other respects.

